McCLAIN, &c.
vs.
ESHAM.

---

Case 19.

Pet. Eq.

## McClain, &c. *vs.* Esham.

### APPEAL FROM LEWIS CIRCUIT.

1. Writings purporting to be executed by a party to a suit should not be used as evidence against such a party unless their execution be duly proved.
2. Instructions should never be given to the jury hypotheticated upon a state of fact which the evidence does not conduce to prove.
3. It is peculiarly the province of the jury to ascertain by their verdict the value of property when it is sought to be recovered; and the

court should not interfere and grant a new trial on the ground that the value fixed is too great, unless it is altogether unwarranted by the testimony.

4. It is no excuse for removing a slave out of Kentucky that the owner unlawfully permitted the slave to go at large and hire himself. (5 *B. Monroe*, 173.)

[The facts of the case appear in the opinion of the court.—Rep.]

*F. T. Hord* for appellant—

1. The court erred in excluding from the jury the testimony of Fitch in regard to the letters which purported to have been written by the appellee. They were in possession of the negro and could not be produced. They were written to Fitch whilst the negro was living with him, and making inquiries about him. And the same is true in regard to the correspondence with Stricklett. (2 *Starkie*, 273; 1 *Greenlcaf, section* 578.)

The negro was the agent of his mistress to seek work and perform it. This agency was proved. The act of the agent is the act of the principal, and whatever he says or does within the scope of his authority is binding on the principal. (2 *Starkie*, 33–4.) These letters of the mistress, in possession of the negro, or their contents, should have gone to the jury. (*Gorman vs. Barnes*, 8 *B. Monroe.* 498.) These letters, with the negro and Stricklett on board the boat, gave Stricklett such control of the negro as showed a control over the negro and an excuse to the owners of the boat.

2. The proof shows that the appellee's negro had been going at large and acting as he pleased for the last four or five years, which is against law. Such conduct was a license to any one to take the slave across the Ohio. Such a violator of the law is not entitled to the protection of the law. This court said, in the case of *Bryant vs. Sheeley*, 5 *Dana*, 531, that the owner of a slave who should violate this provision of the statute would forfeit any right of action for the earnings of the slave under such unlaw-

McClain, &c.
vs.
Esham.

ful privilege. The same principle is recognized in the case of *Carter vs. Leeper*, 5 *Ib.* 261. The appellee ought now to be estopped to discredit the acts of the slave to whom such full credit had been given, and induced others to give credit also. (*Kent's Com. book* 4, *page* 268.) Baron Parke, in the case of *Freeman vs. Cook*, 2 *Well. H. & G. Rep.* 563, vividly portrays the doctrine of estoppel *in pais*, and says, where one, by his words and conduct, willfully causes another to believe in the existence of a certain state of things, and induces him to act on that belief, the former is concluded from averring against the latter a different state of things as existing at the same time. Generally, without regard to intention, if a party so conducts himself as to deceive a reasonable man to his prejudice, he will be estopped from asserting the truth. (*Kent's Com. book* 4, *page* 269; *Den vs. Baldwin*, 1 *Zabriskie's N. J. Reps.* 403.)

3. The court erred in its instruction to the jury as to the measure of damages. The proper criterion is the value of the slave, if hopelessly lost; if not hopelessly lost the value less by the chance of recovery; and in assessing the damages the capacity for business, age, habits of subordination, the liberty he may have enjoyed with facility for escape, and his contiguity to a free state, should all enter into the estimate of value. (See *Strader vs. Graham*, 5 *B. Monroe*, 185) This case is stronger for the appellant than was Strader's case. Here the Strickletts had a right, from the conduct of the appellee, and the permission to pass and act for himself or for his mistress, to treat him and regard him as the agent of the appellee. And in virtue of her letters they had a right to regard themselves as having control over his movements.

4. The damages were excessive—greatly more than the value of the slave·

5. Capt. McClain had no agency in receiving the negro on the boat, and should have been acquitted by the jury. He was not in command of the boat

at the time of the escape; had no knowledge and gave no consent to his reception on the boat, and was not therefore responsible. (*Covington Ferry Co. vs. Moore*, 8 *Dana*, 158; *Brashear vs. Kennedy*, 10 *B. Monroe*, 28.)

*R. H. Stanton* on the same side—

1. The averments in the plaintiff's petition are insufficient. It is said to be an asportation "without any authority to do so." The third paragraph is too indefinite, and does not meet the requirements of the law. The words *"right"* and *"authority"* at first thought would seem to be broad and comprehensive enough; but in the connection in which they are used in the petition, they are restrained in their signification, and apply to the mistress alone. It is not absolutely necessary, to justify the boat, that it should derive its authority to transport a slave, from the owner. For example: The hirer might have "the rightful control" over him, in the contemplation of the statute, yet no express power given by the contract of hiring to take the slave out of the state; and in such a case the boat or owners would not be responsible. (*Moore vs. Foster*, 10 *B. Monroe*, 255.) So if the slave had been arrested for a felony or as a runaway. Those having him in charge would have "the rightful control of him," and the boat and its officers protected. To authorize a recovery, the slave must have been conveyed "without the consent in writing of the owner, or unless the person having the rightful control of the slave was also a passenger on the boat." The latter clause of this sentence is not negatived with sufficient certainty. And for this reason the circuit court erred in not declaring that paragraph of the petition insufficient.

2. The court erred in excluding the testimony of Fitch in regard to the contents of the letters of the plaintiff, Mrs. Esham, and the passes in possession of the slave. They were important, not only in regard to the right of recovery, but the extent of recovery.

Both the letters bore intrinsic evidence of their genuineness. One was received by mail, the other by the negro whilst in the employ of Fitch. Such a correspondence gave the witness such a knowledge of the handwriting of the writer as warranted him to speak of it. (2 *Starkie*, 371; 1 *Greenleaf*, 577.)

3. The instructions to the jury were erroneous. The first given for plaintiff is in these words: "If the jury believe from the testimony that the slave in contest was taken on board the steamer Bostona from Vanceburg to the state of Ohio without the written order of the mistress, the owners of the boat are liable to the plaintiff for any damage she has sustained by carrying the slave from the state of Kentucky, unless the mistress was also a passenger in the boat with the slave." The jury had a right to infer that no other authority than the written consent of the mistress, or her actual presence on the boat as a passenger at the time, would exonerate the owners from liability. But this is not the law. The statute under which the action is brought, (*Rev. Statutes*, chap. 7, *sec.* 3,) makes the officers and owners liable only when they convey a slave "without the consent in writing of the owner of the slave, or unless the owner or person having the rightful control of the slave be a passenger on the boat." The terms of the statute do not make it absolutely necessary for the protection of the boat that the owner's written consent should be had, or that she should be a passenger on the boat at the time. The presence of the hirer or her agent, or any person having "the rightful control" of the negro, would have given protection to the boat from liability.

The second instruction is liable to the same objection. It wholly ignores the idea that any other person than the owner or hirer of the slave could have such "rightful control" of the negro as to exonerate the boat from liability by his consent to his transportation.

4. The jury disregarded both law and evidence in the assessment of damages. The damages are excessive. The highest value fixed by any witness is given without any regard to the prospect of a recapture of the negro, or his deteriorated value by reason of the liberties and privileges he had so unrestrainedly enjoyed by the license of his mistress, against public policy.

5. The plaintiff, by her own act, has contributed to the facility of the escape of the negro, and cannot assert redress for an injury to which she has contributed by her unlawful act. (5 *Dana*, 261; *Ib.* 530; 8 *B. Monroe*, 230; 7 *Ib.* 479–80; 4 *Dana*, 300.)

A reversal is respectfully asked.

*H. Taylor* for appellee—

1. From the facts appearing in the case, the appellants insist that the jury might have found authority for the owners of the boat to take the slave on board the boat, and take him to Ohio, a non-slaveholding state, and where recapture is difficult.

This is not as strong a case for the defense as that of *Graham vs. Strader*, 5 *B. Monroe*, 173. The statute forbids the master of a boat *to take on board the slave of another without the written consent of the owner, unless the slave is accompanied by the master or owner, or other person having the rightful control of the slave.*

Is it, under this statute, sufficient for the owner of the boat conveying away a slave to say to the party wronged that you permitted your slave to go about the county seeking employment which he could not find at home, without being accompanied by you. You suffered him to make contracts for work and receive the money? It is true he was still a slave in your service, laboring for you, but by this license which you have from the necessity of the case been compelled to give, you have forfeited your right of property in him, and we are at liberty to carry him where we please? But the proof does not make the case so strong as was here supposed.

McClain, &c.
vs.
Esham.

2. But the appellants rely that the Strickletts had a right to control the slave. The proof fails to show that they had any "rightful" control over him; he was not in their employ, and they deny having any right to control him. They deny that they authorized the clerk of the boat to take the slave on board. The clerk sustains this statement, for he charged the negro full fare. If he had been taken as a servant, only half fare would have been charged.

3. The proof sustains the finding for the plaintiff, as well as the amount; two witnesses fix the value of the slave at $1500.

4. The ruling of the court in regard to the letters of Mrs. Esham was correct, and is sustained by authority cited by appellants from 2 *Starkie*, 273; 1 *Greenleaf*, 577.

The act of the boat and its officers, the appellees, was in reckless disregard of the rights of the plaintiff, and the damages assessed are not more than the injury demanded at the hands of the jury.

June 27.

Judge STITES delivered the opinion of the court.

By the 3d *section, chapter* 7, *p.* 143, *of the Revised Statutes*, it is provided that "a steamboat, or any other boat or vessel, shall also be liable to indemnify the owner of any slave for any damage he may sustain by reason of the conveying or attempting to convey thereon out of the state, or from one part of the state to another, without the consent in writing of the owner of the slave, or unless the owner or person having the rightful control of the slave be also a passenger on the boat or vessel. This section shall also apply when the slave is taken on board of the boat or vessel at any place out of this state. The captain and owner of the boat shall also be personally liable to the owner for such slave."

Under this section, Eliza Esham brought an action against the master and owners of the steamer Bostona, a Cincinnati and Portsmouth packet, for conveying thereon, from Lewis county in this state, her

slave Joshua, of the value of $1,500, to the town of Portsmouth in the state of Ohio, whereby she alledged said slave escaped from and was wholly lost to her.

The defendants put in issue, by their answer, the material allegations of the petition, and set up in defense, that the slave went on board the boat at the town of Vanceburg in said county, in the charge and under the control of William and Thomas Stricklett, citizens of that town, having, at the time of the embarkation, of said slave, rightful control and power over him, by hiring or otherwise from the plaintiff. A demurrer was likewise filed, and sustained as to portions of the petition, and overruled as to the balance.

Upon a trial of the issues, the jury upon the evidence, and under the instructions of the court, returned a verdict for the plaintiff of $1,500 in damages; and a new trial having been refused, and judgment entered for the amount, the defendants have appealed.

It is complained of here, that the circuit court erred—

1st. In not sustaining the demurrer to the entire petition.

2d. In excluding competent and relevant testimony from the jury.

3d. In granting and refusing instructions; and, in overruling the motion for a new trial.

With regard to the first point, we deem it sufficient to say that the petition contained a substantial and sufficient cause of action, independent of the demand for the penalties imposed by the statute. The demurrer was sustained as to the latter demand, and, in our opinion, rightfully overruled as to the remainder of the petition.

It appeared upon the trial that the slave embarked upon the boat at Vanceburg, in Lewis county, in this state, on the 4th September, 1855, in company with Thomas and William Stricklett, proceeded with

McClain, &c.
vs.
Esham.

them to Portsmouth, Ohio, and had not returned or been heard of since. That he had at the time no written pass or authority from his mistress; and that the said Strickletts had not hired him from her, nor had any rightful control over him. It was likewise proved that his mistress lived in Nicholas county, and that the boy had been accustomed, without restriction of his owner, to hire himself out to whom and whenever he pleased.

Two of the witnesses prove him to have been a carpenter, and worth $1,500. All say that he was obedient and subordinate; but some express the opinion that, in view of his habit of hiring himself without control, and the ease with which he could escape across the Ohio, where his recapture would be hopeless, he was not so valuable to his owner. That it was hazardous to keep slaves near the Ohio, and especially to permit them to go at large. The evidence likewise conduced to show that the escape of a slave to Ohio, was equivalent to a total loss to the owner.

During the progress of the trial the defendants, with a view of showing authority from the plaintiff to the slave to go and come when and where he pleased, offered to prove, by a witness, Fitch, the contents of a letter which, he said, he had received from the mistress by the slave, and also a pass given, or purporting to have been given, by her to the slave. The witness stated, in reference to the letter and pass, "that whilst the negro was working for him, in 1853, (under a contract made with him,) he received a letter, purporting to be from his mistress, enquiring about the negro, and whether he was sick. He knew nothing of the plaintiff; had never seen her write, and knew nothing of the genuineness of the letter. He subsequently wrote a letter to her, but received no reply. The negro brought him a letter when he was at work for witness in 1855, purporting to be from his mistress. In this letter the writer understood witness was going to Cincinnati, Ohio, to buy

lumber for his house, and that he might take the negro with him, if he would keep an oversight over him and not pay him any money there. That the negro said, when he read the letter to him, that his mistress had not written that letter. He further proved, that when the slave last worked for him, that he had a pass purporting to be from her, allowing him to pass to and from his work. That afterwards he had another pass, as he understood, which witness had not seen. He did not know that the pass was genuine."

This testimony was excluded by the court, on motion of the plaintiff, and very properly, in our opinion. The witness was not acquainted with the plaintiff; had only received one letter purporting to come from her; had written to her but received no reply; and knew nothing of her handwriting. To permit him, under such circumstances, to testify as to the contents of papers in the possession of a slave, would be extending the rule to a most dangerous limit. Under an ordinary and liberal construction of the rule allowing proof of the contents of private writings, the testimony here offered was inadmissible; and we are not inclined to give any greater latitude to it, in cases where writings, passes and licenses, can and are so frequently manufactured for slaves, by evil and mischievous persons, aiding them to escape from their rightful owners. The consequences to the owners of such property, seeking redress against those instrumental in taking off their slaves, would be pernicious in the extreme.

The court instructed the jury that, "If they believed from the testimony, that the slave in contest was taken on board the steamer Bostona, from Vanceburg to the state of Ohio, without the written order of the mistress, the owners of the boat are liable to plaintiff for any damage she has sustained by carrying the slave from Kentucky, unless the mistress was also a passenger on the boat with the slave."

McCLAIN, &c.
*vs.*
ESHAM.

1. Writings purporting to be executed by a party to a suit, should not be used as evidence against such party, unless their execution be duly proved.

McCLAIN, &c.
*vs.*
ESHAM.

2d. "That if they believed, from the evidence, that the young Strickletts were not the owners nor hirers of the slave, nor that he was in their employment, they had not such rightful control over him as would authorize the boat to take the slave as a passenger on the boat, &c."

2. Instructions should never be given to the jury hypothecated upon a state of fact which the evidence does not conduce to prove.

It is objected to the first instruction that it does not pursue the language of the statute; that it makes the liability of the defendants depend alone upon the want of written authority of the plaintiff, and the fact that she was not a passenger upon the boat at the same time; and that it precludes the jury from the inquiry as to whether any other person having rightful control over him, was also a passenger with him on the boat.

If there had been any testimony conducing, in the slightest degree, to show, inferentially or otherwise, that another person than the mistress, having the rightful control of the slave, was a passenger with the slave at the time, the failure to submit that enquiry in the instruction, would have been obviously erroneous. But such proof was wanting; and to have submitted an enquiry as to a fact, when there was no evidence conducing to establish it, would have been a work of supererogation, and might have misled and confused the jury. The instruction was predicated upon the evidence, and properly submitted the inquiries necessary to determine the liability of the defendants.

The question of damage was peculiarly within the province of the jury. It was for them to determine the extent of the damage resulting to plaintiff from the act of defendants. The value of the slave, according to the testimony in this case, was the best criterion of such damage. What that value was, considering his age, habits, vocation, health and character for subordination and obedience, as well as his locality, and the chances or inducements for escape from his owner, the jury were to estimate. The opinions of the witnesses as to his value, in

view of these considerations, were elicited upon the trial; and although we might not concur with the jury as to the correctness of their estimate, we do not feel authorized to disturb the verdict for that reason.

Nor was it, in our opinion, necessary for the court to have informed the jury in detail, what considerations should control them in determing the extent of damage. Their attention was sufficiently directed to that matter, by the evidence and examination of the witnesses as to the value of the slave under the circumstances. Besides, the instruction conforms to the statute, and its general language authorizing a finding for the plaintiff commensurate with the damage or loss sustained, was less likely to confuse or mislead a jury, than to enumerate specially the considerations which should control them in estimating that damage.

3. It is peculiarly the province of the jury *to* ascertain, by their verdict, the value of property when it is sought to be recovered; and the court should not interpose and grant a new trial on the ground that the value fixed is *too* great, unless it is altogether unwarranted by the testimony.

The instruction asked for by the defendants was properly denied. However reprehensible the practice of permitting slaves to go at large and without restraint may be, such conduct will not authorize a presumption that the owner has licensed his slave to leave the state at his option. Nor will it protect others who may be instrumental in transporting such slave out of the state in violation of the statute. If they violate the provisions of the statute they do it at their peril, and must be held liable for the consequences. It will avail them nothing, that the owner has also violated the law by permitting his slave to go at large. He is responsible to the commonwealth for such violation, and not to them. (5 *B. Monroe*, 173.)

4. It is no excuse for removing a slave out of Kentucky, that the owner unlawfully permitted the slave to go at large and hire himself. (5. *B. Mon.*173.)

We do not perceive that any error prejudicial to appellants has been committed by the court below, and its judgment is, therefore, affirmed.